## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 20-62701-CIV-ALTMAN/Hunt

**VICTORIA ANGEL**,

    *Plaintiff*,

*v.*

**TARGET CORPORATION** *et al.*,

    *Defendants.*

_____/

### ORDER

After the Plaintiff slipped and fell in a Target store, she sued Target and its then-unidentified store manager—"Jane Doe"—in state court. Target removed the case, arguing that, for jurisdictional purposes, Jane Doe's citizenship should be disregarded. Just two weeks later, the Plaintiff sought leave to substitute Jane Doe's real name, Tim Smoyer. And, since Smoyer is a Florida resident, the Plaintiff asked the Court to remand the case to state court. Because the Plaintiff hasn't been dilatory—and because Target has failed to meet its heavy burden of establishing fraudulent joinder—the Motion for Leave to Amend and to Remand ("Motion") [ECF No. 9] is **GRANTED**.

### THE FACTS

At this early point in the case, the facts are simple. The Plaintiff, Victoria Angel, was walking in a Deerfield Beach Target on February 26, 2019 when she slipped and fell on "a hazardous unmarked liquid substance in the vicinity of the registers." Compl. [ECF No. 1-1] ¶ 6. On July 23, 2020, she sued in Florida state court, alleging that both Target and its store manager, "Jane Doe," negligently caused her injuries. *Id.* ¶¶ 10, 15.

Two months later, on December 31, 2020, Target removed the case, invoking this Court's diversity jurisdiction under § 1332 and arguing that there was complete diversity between the

Plaintiff—a resident of Florida—and Target, a resident of Minnesota and Delaware. *See* Notice of Removal [ECF No. 1] at 3. As for Jane Doe, Target insisted that "her" citizenship shouldn't matter for purposes of assessing this Court's diversity jurisdiction because "she" was, as of that filing, a fictitious party. *Id.* at 2–4; *see also* 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.").

Two weeks later, the Plaintiff filed this Motion, asking for leave to amend the Complaint to substitute Tim Smoyer—the store manager—and to remand for lack of diversity. The Motion is now ripe for adjudication. *See* Response ("Response") [ECF No. 13]. The Plaintiff didn't file a Reply, *see* Docket, and the time to do so has passed, *see* S.D. FLA. L. R. 7(c)(1)(A).

## ANALYSIS

The parties agree that, without Smoyer, they are completely diverse, and the amount in controversy exceeds $75,000. *See* Notice of Removal at 4; *see generally* Motion. The only question left, then, is whether the Plaintiff should be allowed to substitute[1] Tim Smoyer for Jane Doe, which (it's uncontested) would destroy diversity and require a remand. *See* Motion at 6; *see generally* Response.

In opposing the Motion, Target advances two arguments. *First*, it says, the Plaintiff's delay shows that the Motion is merely an "effort to defeat diversity [jurisdiction]." Response at 3. *Second*— and in any event—it accuses the Plaintiff of fraudulent joinder. *Id.* In support, Target claims that, on October 21, 2020—long before the removal—it identified, in a set of discovery responses, Smoyer as the store manager. *Id.*

---

[1] The parties disagree about whether this Motion seeks (as the Plaintiff maintains) to *substitute* a party under Rule 25 or whether, instead, it requests (as Target suggests) to *join* a party under Rules 19 or 20. *See* Motion at 1; Response at 3. Fortunately, the Court need not resolve this question today because the Plaintiff's Motion satisfies even the more onerous requirements of Rules 19 & 20.

## I.        § 1447(e)

Because the Motion seeks both joinder and remand, it isn't governed by the liberal pleading standard of FED. R. CIV. P. 15(a)(2), which instructs courts to grant leave freely when "justice so requires." Instead, in resolving the Motion, this Court must look to 28 U.S.C. § 1447(e), which provides, in pertinent part, as follows: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."

The Court, therefore, has two options: deny joinder or permit it and remand the case. *See Ingram v. CSX Transp., Inc.*, 146 F.3d 858, 862 (11th Cir. 1998). Four factors—referred to as the *Hengens* factors—guide this decision: "(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether [the movant] has been dilatory in asking for the amendment; (3) whether [the movant] will be significantly injured if the amendment is not allowed; and (4) any other factors bearing on the equities." *Simon v. Howmedica Osteonics Corp.*, 981 F. Supp. 2d 1232, 1237 (S.D. Fla. 2012) (citing *Hengens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987)). Although the procedural choice is a binary one, the Court has "broad discretion in weighing these factors" and in deciding which route to take. *See Dever v. Family Dollar Stores of Ga., LLC*, 755 F. App'x 866, 869 (11th Cir. 2018).

These factors favor remand here. *First*, there is no evidence that the Plaintiff's "purpose" is solely to "defeat federal jurisdiction"—as opposed to the more obvious one: to include Smoyer as a co-defendant in the case. *Second*, the Plaintiff moved for substitution within two weeks of removal— that is to say, promptly. *Compare* Notice of Removal (filed December 31, 2020), *with* First Motion to Remand [ECF No. 7] (filed January 14, 2021). *Third* and *fourth*, as the Plaintiff points out, Smoyer *may* be liable here. That wouldn't be so big a deal if Target, too, were liable. But one can imagine a set of circumstances in which Target elects to distance itself from Smoyer—say, by claiming that Smoyer acted outside the scope of his employment. In that scenario, of course, the jury may be inclined to

absolute Target of liability—even as it hits Smoyer for the full amount of the Plaintiff's damages. Cutting Smoyer out of the case now—in the litigation's infancy—could thus unfairly prejudice the Plaintiff's chance of a full recovery.

Curiously, on the *Hengens* factors, Target offers only one argument: that the Plaintiff waited too long. *See* Response at 3. As we've hinted, Target says that, on "October 21, 2020," it "served its discovery responses in the underlying state court action [DE 1 – ex. 2], which provided the identity of Mr. Smoyer as the Target Team Leader on Duty[.]" *Id.* at 3. And yet, Target notes, the Plaintiff didn't move to add Smoyer until January 14, 2021—almost three months later. *Id.* This timeline, Target submits, strongly suggests that the Plaintiff is only seeking to avoid federal jurisdiction.

For two reasons, we find Target's contentions unavailing. *First*, we've pored over the 107-page document Target relies on for its supposed October disclosure of Smoyer's identity.[2] *See* State-Court Docket [ECF No. 1-2]. Smoyer's identity appears nowhere in that document (or its various attachments). *Id.* Specifically, in Interrogatory 19, the Plaintiff asked Target to "[p]rovide the complete name and current contact information of the manager on duty at the time of the incident." Plaintiff's Initial Interrogatories [ECF No. 1-2] at 23. This (presumably) is the request that would have elicited a response that included Smoyer's name. But Target doesn't appear to have answered the question posed in Interrogatory 19—at least not in the version submitted here. *See generally* State-Court Docket. In fact, in its Response—stamped (as Target rightly points out) on October 21, 2020—Target answers only Interrogatories 1–13. *See* Target's Responses to Initial Interrogatories [ECF No. 1-2] at 73. And, since a signature block follows the answer to Interrogatory 13, there's little reason to suppose that the remaining pages were inadvertently omitted. *See id.* Nor, as we've said, did Target refer to Smoyer

---

[2] The document consists of what appears to be the entire state-court docket—with its various motions, responses, orders, and discovery disclosures.

*anywhere else* in the State-Court Docket. *See generally* State-Court Docket.[3] The record thus doesn't support Target's claim that the Plaintiff knew Smoyer's identity since October 21, 2020 and did nothing about it.

*Second*, in its Notice of Removal—filed on December 31, 2020—Target argued that the Court could ignore Jane Doe's citizenship because "this *unknown* individual has not been sufficiently described by the Plaintiff, nor can Target *reasonably ascertain the identity* of Jane Doe based on the allegations as set forth in the Plaintiff's Complaint." Notice of Removal at 3 (emphasis added). This argument is at least in tension with—and seems to contradict—Target's new position, which (again) is that both parties have known *precisely* who Jane Doe was since October of 2020. Target can't have its cake and eat it, too. Target cannot ask this Court to ignore Jane Doe's citizenship because her identity is *unknown* and cannot reasonably be ascertained while simultaneously accusing the Plaintiff of dilatory conduct for not acting on Jane Doe's identity—which, Target now says, everyone knew. If, as appears to be the case, Target never disclosed Smoyer's identity to the Plaintiff in October of 2020, then (it goes without saying) the Plaintiff couldn't have been dilatory in failing to substitute Smoyer in sooner.[4]

It's blackletter law that "the plaintiff is the master of the complaint[.]" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987). The Plaintiff included the store manager in her complaint—at the earliest

---

[3] Because Target didn't use pin cites, the Court had to work through the document manually—and, from time to time, with a (liberal) use of the "find" function (control-F). We remind Target that "[j]udges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *Albrechtsen v. Bd. of Regents of Univ. of Wisconsin Sys.*, 309 F.3d 433, 436 (7th Cir. 2002) ("Courts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at the summary judgment stage to paw through the assembled discovery material.").

[4] Other than Target's curious and unsupported reference to October 21, 2020, neither side tells us when the Plaintiff first discovered Smoyer's identity. If we accept the assertion in Target's Notice of Removal—that, as of December 31, 2020, the parties hadn't yet ascertained Smoyer's identity—then the Plaintiff would only have learned of Smoyer *after* removal. Since the Plaintiff moved to remand just two weeks later, her conduct can hardly be characterized as "dilatory."

possible stage of this litigation. Compl. ¶ 15. And, within just two weeks of removal, she moved to amend the complaint to add the store manager's real name. Given all that, the Court will not exercise its discretion under § 1447(e) to prevent the Plaintiff's request for joinder.

## II.   Fraudulent Joinder

The Court also rejects Target's second argument—that the proposed joinder is fraudulent. Response at 3. "When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court. The plaintiff is said to have effectuated a 'fraudulent joinder[.]'" *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). "To establish fraudulent joinder, the removing party has the burden of proving by clear and convincing evidence that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011). "This burden is a heavy one," *id.*, because "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir. 1983)); *see also Henderson*, 454 F.3d at 1284 ("Henderson's patchy allegations may ultimately prove insufficient, but we are unable to say there is no possibility she has asserted a colorable claim[.]"). Finally, "[a]ll doubts about the propriety of removal should be resolved in favor of remand." *King v. Gov't Emps. Ins. Co.*, 579 F. App'x 796, 800 (11th Cir. 2014); *Univ of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("[A]ll doubts about jurisdiction should be resolved in favor of remand[.]").

In Target's view, there's "no possibility" that the Plaintiff could establish a cause of action against Smoyer. *See* Response at 3. Here, again, Target is mistaken. To prevail on her negligence claim against Smoyer, the Plaintiff must prove four elements: "(1) the existence of a duty recognized by law

requiring the defendant to conform to a certain standard of conduct for the protection of others including the plaintiff; (2) a failure on the part of the defendant to perform that duty; and (3) an injury or damage to the plaintiff [(4)] proximately caused by such failure." *Kenz v. Miami-Dade Cty.*, 116 So. 3d 461, 464 (Fla. 3d DCA 2013).

In Florida, "the law is clear to the effect that officers or agents of corporations may be individually liable in tort if they commit or participate in a tort, even if their acts are within the course and scope of their employment." *White v. Wal-Mart Stores, Inc.*, 918 So. 2d 357, 358 (Fla. 1st DCA 2005). But, "to establish liability, the complaining party must allege and prove that the officer or agent owed a duty to the complaining party, and that the duty was breached through personal (as opposed to technical or vicarious) fault." *Id.*; *see also Vesta Const. and Design, L.L.C. v. Lotspeich & Assoc., Inc.*, 974 So. 2d 1176, 1180 (Fla. 5th DCA 2008) ("A corporate officer or employee is not liable for the torts of the company simply because of the person's position with the company.") A duty thus arises only if the agent is "actively negligent." *White*, 918 So. 2d at 358. Of course, a defendant's *failure* to act under circumstances in which a reasonable person would have acted can be evidence of active negligence. *See id.* ("[The Third Amended Complaint] alleges that Gregg was directly responsible for carrying out certain responsibilities; that he negligently failed to do so; and that, as a result, Ms. White was injured."). At the same time, "an officer or agent may not be held personally liable simply because of his general administrative responsibility for performance of some function[.]" *Id.* (cleaned up).

The Plaintiff has sufficiently alleged all four elements of her negligence claim against Smoyer. *First*, she claims that Smoyer *personally* owed her a duty because *he* "negligently failed to exercise reasonable care relating to the water on the floors of the store while under his/her control in that she/he failed to take reasonable precautions to maintain said premises in a safe condition," and that *he* "personally committed a tort by negligently failing to establish a procedure for regular inspection and maintenance of the premises or alternatively by failing to follow her own established

procedures[.]" Compl. ¶¶ 17–18. In other words, the Plaintiff says, "Defendant . . . as the store manager was to: a) conduct, personally, or through those under her control, reasonable periodic inspections at reasonable intervals, to discover and to remove inherently dangerous conditions . . . and b) to so arrange signs and products for sale such as not to distract the attention of persons . . . while shopping on and at said premises." *Id.* ¶ 18. *Second*, the Plaintiff continues, the store manager "breached her duty of care" by failing to conduct those inspections or establish these procedures. *Id.* ¶ 21. *Third*, the Plaintiff asserts that, "[b]ut for the negligent failure of Defendant, JANE DOE, to perform such duties and responsibilities, Plaintiff, VICTORIA ANGEL, would not have slipped and injured herself." *Id.* ¶ 21. *Fourth*, as a consequence of Smoyer's negligence, the Plaintiff says that she "suffered bodily injury and resulting pain[.]" *Id.* ¶ 23.

Target advances two arguments in response—both unpersuasive.

*First*, ignoring the Plaintiff's well-pled allegations, Target submits that Smoyer can never be *personally* liable because he wasn't actively negligent. *See* Response at 4 ("A corporate agent or employee may not be held personally liable because of his general administrative responsibility or performance of some function of his employment—he or she must be actively negligent." (cleaned up)). But the Plaintiff specifically alleges that Smoyer *personally* failed to arrange the signs properly and that he *personally* failed to conduct (or to order his employees to conduct) periodic inspections. Compl. ¶¶ 17–18. In other words, the Plaintiff isn't suing Smoyer merely because he was the manager of the store in which she was injured. She argues, instead, that Smoyer *personally* had a duty to make sure the floors were clean and free of dangerous conditions—and that he *personally* failed to carry out this duty. Discovery may well prove this allegation untrue, "but we are unable to say"—at this early stage of the case—that "there is no possibility she has asserted a colorable claim[.]" *Henderson*, 454 F.3d at 1284. She has thus plausibly alleged that Smoyer was "actively" negligent.

Target's second argument is more nuanced. Florida, it says, has eliminated "negligent mode of operation" for premises liability. Response at 4–5. Here, Target is partially correct. In 2010, the Florida

legislature amended the section on "Premises Liability for Transitory Foreign Substances in a Business

Establishment," so that it now reads:

> (1) If a person slips and falls on a transitory foreign substance in a business establishment, the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it. Constructive knowledge may be proven by circumstantial evidence showing that:
> > (a) The dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition; or
> > (b) The condition occurred with regularity and was therefore foreseeable.
> (2) This section does not affect any common-law duty of care owed by a person or entity in possession or control of a business premises.

FLA. STAT. § 768.0755.

But this amendment doesn't help Target here. The amendment, after all, doesn't absolve store

managers of liability; it simply requires plaintiffs to *plead* (and later *prove*) that the manager had actual

or constructive knowledge. Target's cases, in fact, recognize this distinction. So, for instance in

*Khorran*—which was not a slip-and-fall case—the Third District Court of Appeal noted that, "under

the mode of operation theory of negligence, the requirement of establishing constructive knowledge

is altered or eliminated." *Khorran v. Harbor Freight Tools USA, Inc.*, 251 So. 3d 962, 966 & n.2 (Fla. 3d

DCA 2018). In a footnote, however, the court acknowledged that "this no longer holds true in

premises liability cases involving a slip and fall on a transitory foreign substance." *Id. Khorran* thus says

nothing controversial or surprising: a plaintiff in a slip-and-fall case must still plead (and later prove)

that the defendant had actual or constructive knowledge. Our Plaintiff has done precisely that.

Target's two other cases—*Kenz* and *Pembroke Lakes*—stand for the same proposition: that, in

premises cases, a plaintiff "must prove actual *or constructive* notice." FLA. STAT. § 768.0755(1)(a)

(emphasis added); *see Kenz*, 116 So. 3d at 464 (concluding that the amendment to § 768.0755 was a

procedural change in the law because, rather than alter any element of the claim, it simply changed the

method of proving an element of that claim); *Pembroke Lakes Mall Ltd. v. McGruder*, 137 So. 3d 418

(Fla. 4th DCA 2014) (rejecting *Kenz* and finding that the amendment was substantive because it created

a new element—actual or constructive knowledge).

Target's cases thus leave open the possibility that Smoyer might be liable if he (1) had a duty to keep the aisles clean, (2) had actual or constructive notice of the substance on which the Plaintiff slipped, and (3) failed, despite this knowledge, to keep the aisles clean. Our Plaintiff properly alleges all three facts here: she says that Smoyer owed her a duty of care to keep the aisles clear of dangerous liquids, *see* Compl. ¶ 18, and that he negligently (that is, with actual or constructive knowledge) failed to carry out that duty, *id.* ¶ 19. At this pleading stage of the litigation, she need do nothing more.

Our case, in fact, is on all-fours with this Court's recent decision in *Krobatsch v. Target Corporation*, 2020 WL 6475175 (Oct. 30, 2020) (Altman, J.). In *Krobatsch*, as here, Target argued that the plaintiff had fraudulently joined the store manager, who didn't know about the spill and thus couldn't be liable for it. *Id.* at *4. In support of this position, Target submitted a sworn (and unrebutted) affidavit, in which the store manager attested that he didn't know about the transitory substance on the floor. *Id.* ("Of course, [the store manager's] Affidavit is pellucid (and unrebutted) that he didn't see the spill, he wasn't told about the spill, he didn't overhear anyone mention a spill, and he was totally unaware of the spill until he was called to the front to attend to the Plaintiff."). Nevertheless, this Court found joinder appropriate and remanded the case to state court. In discussing the manager's affidavit, the Court explained that "these disavowals suggest only that [the store manager] didn't have *actual* notice. Under Florida law, however, the manager of a store can be liable if he has either actual *or constructive* notice." *Id.*; *cf. Winn-Dixie Stores, Inc. v. Guenther*, 395 So. 2d 244, 246 (Fla. 3d DCA 1981) ("[T]estimony that the liquid was dirty and scuffed and had several tracks running through it was, in our opinion, adequate to impute constructive notice of the hazardous condition to the store manager.").

As this analysis highlights, *Krobatsch* was actually a harder case than ours is. There, the store manager had submitted an unrebutted affidavit, in which he'd sworn that he *didn't* have actual notice. *See Krobatsch*, 2020 WL 6475175. at *4. As we've said, we remanded the case anyway because Target

hadn't foreclosed the possibility that the manager had *constructive* notice. But the point is that Smoyer—our store manager—has submitted no such affidavit, thus leaving open the possibility that he had both actual *and* constructive notice. It is, after all, the *Defendant's* burden to show that there's "no possibility" that Smoyer had notice. *Stillwell*, 663 F.3d at 1332. Target has failed to carry that burden here.

In a footnote, Target tries to distinguish *Krobatsch* by noting that, while the plaintiff in that case named the store manager *before* removal, our Plaintiff seeks to name Smoyer only *after* removal. *See* Response at 3 n.2. But the plaintiffs in both cases *sued* the store manager *before* removal. Our Plaintiff just didn't know the manager's name until later—a minor factual distinction that doesn't alter the fraudulent joinder analysis at all. Target, in fact, cites no case for the proposition that a plaintiff cannot assert a claim against a store manager—and that her joinder of the manager is therefore fraudulent—simply because she failed to learn the manager's identity until later in the litigation. *Id.* And that's because such a rule would make no sense. The doctrine of fraudulent joinder, after all, turns on the *viability* of the plaintiff's claim against the store manager—not, as Target would have it, on *when* the plaintiff happened to discover the manager's name. Such a rule would also inject perverse incentives. Why, while the case lingered in state court, would Target ever disclose the store manager's name if it knew that, so long as it removed *before* the disclosure, it would obviate any future motion for remand? Target's is a distinction without a difference—and so, we see no good reason to depart from *Krobatsch* here.

\*\*\*

"Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; for example, unlike the rules applied when plaintiff has filed suit in federal court with a claim that, on its face, satisfies the jurisdictional amount, removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the

federal court must find that the joinder was proper and remand the case to the state court." *Tillman*, 253 F.3d at 1305. Because there's *some* possibility that Smoyer might be liable to the Plaintiff for her injuries, we must remand this case to state court.

Having carefully considered the Motion, the record, and the governing law, the Court hereby **ORDERS and ADJUDGES** as follows:

(1) The Motion [ECF No. 9] is **GRANTED**. Tim Smoyer is substituted in for "Jane Doe" as a Defendant in this case.

(2)  Since Smoyer is a Florida resident, this case is **REMANDED** to the 17th Judicial Circuit Court in and for Broward County, Florida.

(3) The Clerk of Court shall **CLOSE** this case. Any pending deadlines and hearings are **TERMINATED**. All other pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 12th day of April 2021.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:      counsel of record